IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GAYLON D. GARRETT                                                            PLAINTIFF

V.                                    NO. 4:16CV00150 DPM/PSH

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                               DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction:

Plaintiff Gaylon D. Garrett applied for disability insurance benefits on December 14, 2012, alleging an onset date of July 3, 2012. (Tr. at 10). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 20). The Appeals Council denied Ms. Garrett's request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Garrett has requested judicial review.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

### II. The Commissioner's Decision:

The ALJ found that Ms. Garrett had not engaged in substantial gainful activity since the alleged onset date of July 3, 2012. (Tr. at 12). The ALJ found at Step Two that Ms. Garrett had the

following severe impairments: diabetes, status post-surgery to remove kidney tumor, mild osteoarthritis of the bilateral shoulders, affective disorder, and anxiety disorder. *Id.* At Step Three, the ALJ determined that Ms. Garrett's impairments did not meet or equal a listed impairment. *Id.*

Before proceeding to Step Four, the ALJ determined that Ms. Garrett had the residual functional capacity ("RFC") to perform light work except for the following limitations: 1) no overhead reaching with the right upper extremity; 2) no more than occasional performance of each postural activity; 3) no climbing of ladders, ropes, or scaffolds; 4) no work at unprotected heights; 5) only work where interpersonal contact is superficial to the work performed, with the complexity of one to two-step tasks learned and performed by rote, with few variables and little judgment, and the supervision required is simple, direct, and concrete; and 6) work is limited to Specific Vocational Preparation (SVP) level 1 or 2 jobs that can be learned in 30 days. (Tr. at 14). Next, the ALJ found that Ms. Garrett is able to perform past relevant work as a cashier. (Tr. at 19). The ALJ made an alternative finding at step Five: evaluating testimony from the Vocational Expert ("VE"), the ALJ held that based on Ms. Garrett's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, specifically, lamp inspector and bench press operator. (Tr. at 20). Consequently, the ALJ found that Ms. Garrett was not disabled. Id.

### III. Discussion:

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial

evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Ms. Garrett's Arguments on Appeal

Ms. Garrett argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred by failing to classify obesity and disc degeneration as severe impairments; the ALJ gave improper weight to the state-agency medical consultants; the ALJ failed to develop the record; the ALJ did not fully account for Ms. Garrett's mental impairments in the RFC; and the credibility analysis was flawed. Reviewing the entire record, the Court finds that the ALJ's determinations were supported by substantial evidence.

The medical evidence indicates five distinct medical conditions. The first is a granuloma

in the left lobe of the kidney, which was repaired with a renal nephrectomy on July 3, 2012. (Tr. at 278). On examination over the next three days, Ms. Garrett reported that her pain was controlled, she had no acute complaints, and she was doing well. (Tr. at 293-201). There is little evidence to indicate that the kidney condition continued to be a problem.

After complaining about right shoulder pain in 2013, Ms. Garrett underwent an MRI that revealed a right shoulder rotator cuff tear. (Tr. at 676). She had surgery to repair the injury, and after surgery, she reported that she was doing well with no complaints. (Tr. at 547-549).

Ms. Garrett suffers from diabetes mellitus. However, at several visits to Boston Mountain Rural Health Center, the examination revealed that the diabetes was uncomplicated and controlled. (Tr. at 372-384). She did not complain of problems arising from diabetes.

Ms. Garrett complained of neck and back pain off and on, and x-rays in 2013 revealed degenerative changes in the cervical and lumbar spine. (Tr. at 492, 496, 677, 678). However, the x-rays revealed no acute injury or disease. (Tr. at 667-668). This condition only required conservative treatment, with no surgery, hospitalization, or physical therapy.

Ms. Garrett sought regular treatment for her anxiety and depression. As the ALJ noted, mental status exams over the two year period of treatment were on the balance, normal. She had no mental health complaints and a normal psychiatric exam on October 12, 2012. (Tr. at 368). She had no delusions or hallucinations and was well groomed with good eye contact and logical thought process on October 22, 2012. (Tr. at 346). She was logical and oriented to time and place on November 5, 2012. (Tr. at 349). She was alert and oriented with normal psychiatric affect and no thought disorder on November 20, 2012. (Tr. at 360). She was alert and cooperative with normal mood and affect and normal focus and concentration on May 9, 2013. (Tr. at 492). She had normal

mood and affect and was alert and cooperative on June 14, 2013. (Tr. at 496). She exhibited euthymic mood and was logical and cooperative on April 8, 2013, April 22, 2013, July 12, 2013, September 27, 2013, October 18, 2013, November 15, 2013, and January 17, 2014. (Tr. at 517-537). She had normal mood, affect, focus and concentration on May 18, 2014. (Tr. at 561). Ms. Garrett complained of almost debilitating depression and anxiety over this period, but her mental status exams indicate otherwise.

First, the ALJ properly considered Ms. Garrett's obesity and degenerative changes. He weighed the opinions of the state-agency consultants that prescribed light work, as well as mild objective testing results and conservative treatment. Her neck and back x-rays showed no acute injury or disease. She did not require hospitalization or surgery. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). And the need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Moreover, the RFC, which included postural limitations, shows that the ALJ considered the limitations alleged by Ms. Garrett. And the RFC the ALJ assigned was more limiting than that offered by the state consultants.

The weight the ALJ ascribed to the state consultants was proper. First, the record lacks a treating physician opinion regarding her physical impairments. The ALJ is allowed to rely upon the opinions of the state consultants, along with medical evidence, in the absence of a treating source opinion. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). And the burden to prove disability rests with the claimant. See *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)(the plaintiff carries the burden of proving disability through the first four steps of the evaluative process). Ms. Garrett had ample opportunity to obtain her own treating doctor's opinion to counter the state consultant

5

opinions. She did not do so. Also, there is support for the state consultants' opinions because although Ms. Garrett asserted that she was very limited functionally, her activities of daily living suggest otherwise. She said she could cook, do laundry, wash dishes, drive, shop, visit friends, and go to church. (Tr. at 15). Such daily activities undermine her claims of disability. See *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The weight given to the opinions of the state consultants was proper.

Ms. Garrett argues that the ALJ failed in his duty to develop the record. The ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). The ALJ is required to recontact a treating or consulting physician only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-927 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). In this case, there are over 400 pages of medical records. The ALJ discussed those records in his opinion. Again, Ms. Garrett did not offer a medical source statement from her own doctor, and this failure does not place a burden on the ALJ to make her case for her. The record was fully and fairly developed.

Ms. Garrett next contends that the RFC assigned by the ALJ did not fully incorporate her mental limitations. She certainly suffered from depression and anxiety. But her mental status examinations were grossly normal. And she did not have episodes of decompensation or require hospitalization. She treated her mental health conditions conservatively. Additionally, her daily activities render her allegations of severe mental disability less than credible. The ALJ did account for her mental impairments in the RFC: he limited her to simple work with little interpersonal

contact and simple and direct supervision. He required only SVP level 1 or 2 jobs in the RFC.[1] Ms. Garrett contends that because Dictionary of Occupational Titles ("DOT"), upon which the VE relied, provides that the cashier job requires level three reasoning, that job is incompatible with the assigned RFC requiring SVP level 1 or 2. Level three reasoning is defined as applying "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and dealing "with problems involving several concrete variables in or from standardized situations." *DOT*, app. C, pt. III, 1991 WL 688702 (4th ed. rev. 1991); *Pierce v. Apfel*, 173 F.3d 704, n. 5 (8th Cir. 1999). There is nothing in the medical record indicating Ms. Garrett cannot apply commonsense understanding in standardized situations. Her daily activities alone discredit her claim that she cannot work a level three job. Moreover, the Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). A claimant is not required to perform the maximum skill level at any job proffered by the VE. Additionally, there is "no bright-line rule stating whether there is a *per se* conflict between a job that requires level three reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d. Cir. 2014).

Additionally, although the cashier job may, at a maximum, require a reasoning level of three, the RFC determination limited Ms. Garrett to jobs with SVP of 1 or 2, which constitutes a limitation to unskilled work. See 20 C.F.R. §§ 404.1568(a), 416.968(b) (unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time"). There is

---

[1] The DOT assigns each occupation a number that reflects the job's specific vocational preparation ("SVP") time, i.e., how long it generally takes to learn the job. *Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998).

nothing in the medical record that indicates the unskilled cashier job would be beyond Ms. Garrett's capabilities. The VE's testimony providing for cashier work was consistent with the assigned RFC, and Ms. Garrett has not shown that her limitations rule out cashier work.

Ms. Garrett's final argument is that the ALJ's credibility analysis was flawed. An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). The ALJ discussed his reasons for finding Ms. Garrett less than credible. He cited her ability to undertake a variety of daily activities, which discredited her claims of disabling conditions. He discussed her consistently normal mental status exams. He addressed the mild objective testing results and conservative treatment. These factors support his determination that Ms. Garrett's subjective complaints were less limiting that she alleged. The credibility analysis was proper.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Garrett is not disabled. The ALJ gave proper weight to medical consultants, did not fail a duty to develop the record, assigned the correct RFC, and made a proper credibility finding. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 4th day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE